| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| CUMBERLAND COUNTY | 25CV015677-250 |

| | |
|---|---|
| LAWANDA MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| FAYETTEVILLE STATE UNIVERSITY, ) | |
| a constituent institution of the University ) | |
| of North Carolina System, ) | |
| ) | |
| Defendant. ) | |

NOW COMES the Plaintiff, by and through undersigned counsel, complaining of the Defendant, and alleges and says the following:

## NATURE OF THE CASE

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 621 *et seq.* (Age Discrimination in Employment Act), Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, and the laws of the State of North Carolina. Plaintiff seeks redress for the unlawful employment practices of Defendant, who discriminated against Plaintiff on the basis of gender and age. This Court's jurisdiction is invoked to remedy violations of rights guaranteed under Federal and State law prohibiting discrimination in the workplace. As a result of Defendant's discriminatory and retaliatory actions, Plaintiff suffered significant harm, including but not limited to lost wages and benefits, emotional distress, humiliation, loss of career advancement opportunities, and other compensatory damages. Plaintiff further seeks punitive damages to the extent authorized by law, as well as any other relief deemed just and proper, as more fully set forth below.

## PARTIES AND JURISDICTION

1. Dr. LaWanda Miller ("Plaintiff" or "Dr. Miller") is, and at all times relevant to this Complaint, a citizen and resident of Fayetteville, Cumberland County, North Carolina.

2. Defendant Fayetteville State University ("Defendant" or "FSU") is, and at all times relevant to this Complaint, a state-funded constituent institution of the University of North Carolina System.

3. This Court has jurisdiction over the subject matter of this action under the common law of North Carolina and pursuant to the judicial power vested in the General Court of Justice by N.C.G.S. §§ 7A-3, 7A-240, and 7A-243.

4. Venue is proper pursuant to N.C.G.S. § 182, as Cumberland County is the county in which the action arose.

## FACTUAL ALLEGATIONS

5. The allegations of Paragraphs 1-4 of this Complaint are re-alleged and incorporated herein by reference.

6. Since September 19, 1994, Plaintiff, Dr. Miller, served at Fayetteville State University ("FSU") for thirty (30) years in multiple senior leadership roles, including Assistant Athletics Director for Business, Senior Woman Administrator, and Deputy Title IX Coordinator. She also served as Head Cheerleading Coach for twenty-five (25) years.

7. Throughout her tenure, Dr. Miller held prominent leadership roles in collegiate athletics, including serving as President of the CIAA Cheer Coaches Association, Southern Vice President for the CIAA Management Council, Co-Chair for the 50th Anniversary of the CIAA Women's Basketball Tournament, and as a member of the NCAA Committee on Women's Athletics.

8. During her employment at FSU, Dr. Miller actively advanced women's sports initiatives, including work on Women's Flag Football legislation and the NCAA Woman of the Year selection process.

9. Dr. Miller received an Award of Appreciation for over fifteen (15) years of excellence as Deputy Title IX Coordinator and was named CIAA Athletics Administrator of the Year, becoming the only Senior Woman Administrator to receive this honor since the award's inception.

10. Over twenty-five (25) years of coaching, Dr. Miller maintained an exemplary record with a complaint rate of less than 0.06% among the student-athletes she coached. She consistently met all performance expectations throughout her thirty (30)-year career at FSU and never received a single negative write-up or counseling notice.

11. On or around March 11, 2024, FSU's Office of Risk and Compliance ("ORC") received student complaints alleging that, in or around November 2022, two students reported to Dr. Miller that a cheer team member had been raped and that Dr. Miller failed to report or address the alleged disclosure as a potential Title IX violation.

12. These allegations were false. Dr. Miller never received such a report, and had she received one, she would have taken immediate action, as she had consistently done throughout her decades of service.

13. Upon information and belief, the students who submitted these false complaints were disgruntled former cheerleaders with personal animosity toward Dr. Miller and made these allegations in retaliation.

14. The complaints further included baseless allegations of racial discrimination (claiming she prohibited African-American students from wearing natural textured hair), gender-based

3

Case 5:25-cv-00829-D-RJ    Document 1-5    Filed 12/23/25    Page 3 of 16

comments (alleging she commented on a student's breasts), and favoritism among team members. These claims were wholly false, unfounded, and inconsistent with Dr. Miller's longstanding record of professionalism and advocacy for women's athletics.

15. On or around August 14, 2024, FSU held a pre-disciplinary conference concerning these allegations.

16. Despite the severity of the claims, no evidence substantiated them. Dr. Miller was further denied the opportunity to present witnesses or supporting documentation in her defense.

17. FSU policy requires that "parties are permitted to provide evidence to the Investigator, including a list of witnesses and a statement about the potential evidence that each witness may provide," and requires submission of evidence seventy-two (72) hours prior to the hearing.

18. Dr. Miller was not informed of the nature of the investigation until the pre-disciplinary meeting – at which time she was expressly prohibited from discussing any details of the proceedings. These procedural failures prevented her from identifying witnesses or presenting exculpatory evidence, directly violating FSU policy.

19. Dr. Miller requested access to the transcribed witness statements and social-media evidence referenced by investigators – materials she was promised and which FSU policy required to be provided. These requests were ignored. FSU instead required Dr. Miller to respond to allegations without access to any of the evidence being used against her, leaving her unable to meaningfully defend herself.

20. On or around August 15, 2024, Dr. Miller received a notice of termination citing alleged misconduct and Title IX violations.

21. Upon information and belief, as the only senior female administrator in FSU's Athletics Department and her decades of work advocating for women, Dr. Miller was subjected to a biased, accelerated, and inequitable disciplinary process because of her gender.

22. Upon information and belief, male colleagues in similar positions within the department received significantly more lenient treatment for similar or more serious allegations.

23. Upon information and belief, the investigation was conducted by an inexperienced investigator who lost her initial notes, failed to secure or review witness statements, and did not follow basic investigative procedures.

24. Upon information and belief, the investigator failed to afford Dr. Miller any semblance of due process, rendering her termination predetermined and procedurally improper.

25. Upon information and belief, FSU maintains clear written policies outlining required steps for investigations to ensure fairness and due process. Dr. Miller was denied these protections in direct violation of FSU's policies.

26. Immediately upon her termination, Dr. Miller's FSU email was deactivated, severing her connection to professional networks and preventing her from notifying organizations such as the NCAA and CIAA where she held national leadership roles. This abrupt lack of communication created the appearance of impropriety and damaged her reputation.

27. Between August 19 and August 23, 2024, FSU conducted an internal post-termination review, which found no Title IX violation and identified significant inconsistencies in the prior allegations.

28. On or around August 29, 2024, Dr. Miller filed her initial State Human Resources Act ("SHRA") form, followed by a supplemental filing on October 14, 2024.

29. Between 2023 and 2024, FSU repeatedly attempted to persuade Dr. Miller to change her employment status from SHRA to Exempt from the Human Resources Act (EHRA), even offering a raise to incentivize the switch – an action that would have effectively stripped her of the benefits of the post-termination grievance process. Dr. Miller declined.

30. On or around November 4, 2024, mediation was held, and the parties executed a Memorandum of Agreement ("MOA"), under which FSU agreed to: remove all references to "termination" and "investigation" from Dr. Miller's HR file; provide positive employment references; and allow her to apply for retirement benefits.

31. Dr. Miller agreed to dismiss her pending grievance contingent upon FSU's compliance with the MOA.

32. FSU subsequently breached the signed MOA.

33. On or around November 10, 2024, Dr. Miller applied for unemployment benefits.

34. On or around December 5, 2024, FSU challenged her application, asserting she had been terminated for "misconduct," resulting in an initial denial of benefits.

35. Dr. Miller appealed the determination and requested a hearing.

36. On or around March 10, 2025, the unemployment appeals hearing was held. The decision was reversed, finding no misconduct by Dr. Miller.

37. On or around July 31, 2025, Dr. Miller received her Right to Sue Letter from the EEOC.

38. Upon information and belief, FSU, or agents acting on behalf of FSU, communicated to potential employers and national athletics organizations that Dr. Miller had been terminated for misconduct, thereby harming her professional reputation and impairing her ability to secure future employment in her longstanding field.

39. Upon information and belief, Dr. Miller's former position was filled by an individual approximately twenty (20) years her junior who possessed fewer qualifications and credentials than Dr. Miller.

## CLAIMS FOR RELIEF

### COUNT I
(Title VII Gender Discrimination/Disparate Treatment)

40. The allegations of Paragraphs 1-39 of this Complaint are re-alleged and incorporated herein by reference.

41. At all times relevant, Defendant FSU was an "employer" within the meaning of Title VII Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

42. At all times relevant, Plaintiff Dr. Miller was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

43. Plaintiff is a female and therefore a member of a protected class under Title VII.

44. For nearly thirty (30) years, Plaintiff served FSU with an exemplary record, including high-level leadership positions.

45. Plaintiff consistently met or exceeded all performance expectations, never received a negative performance evaluation, and maintained an exceptionally low complaint rate of less than 0.06%.

46. Plaintiff was the only senior female administrator in the FSU Athletics Department.

47. On or around March 11, 2024, FSU initiated an investigation based on false and unsubstantiated student complaints.

48. Despite the seriousness of the allegations, Defendant denied Plaintiff basic procedural fairness.

49. Upon information and belief, similarly situated male employees in the Athletics Department – facing similar or more serious allegations – were treated more favorably, were afforded full investigative rights and due process, and were not terminated.

50. On or around August 15, 2024, Defendant terminated Plaintiff's employment based on these false allegations, constituting an adverse employment action under Title VII.

51. Defendant's proffered reasons for terminating Plaintiff were pretextual and not worthy of credence.

    a. Internal post-termination review later found no Title IX violation and identified inconsistencies in the allegations.

    b. Plaintiff's long track record of excellence contradicts Defendant's stated basis for termination.

    c. Defendant failed to follow its own policies, selectively applying procedures in a manner that treated Plaintiff disparately.

52. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered and continues to suffer damages, including loss of income, loss of benefits, reputational harm, loss of professional standing, diminished career opportunities, emotional distress, and other compensatory damages.

53. As a direct result of the Defendant's violation of federal law, Plaintiff has suffered financial losses in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

54. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages to the fullest extent permitted by law.

## COUNT II
### (Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*)

55. The allegations of Paragraphs 1-54 of this Complaint are re-alleged and incorporated herein by reference.

56. Defendant FSU in an "employer" within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630(b).

57. At all relevant times, Plaintiff Dr. Miller was an "employee" within the meaning of the ADEA, 29 U.S.C. § 630(f).

58. Plaintiff is a member of the protected age class under the ADEA, as she is over forty (40) years of age.

59. Plaintiff worked for FSU for approximately thirty (30) years in senior leadership positions within the Athletics Department and had a longstanding history of outstanding performance, multiple awards, and nationally recognized contributions. She never received a negative evaluation or disciplinary action.

60. Despite her exceptional performance, extensive experience, and demonstrated commitment to the institution, Plaintiff was subjected to false allegations, a rushed and procedurally flawed investigation, and termination on or around August 15, 2024.

61. Upon information and belief, Plaintiff was replaced by substantially younger employees, or Defendant otherwise demonstrated a preference for younger, less experienced individuals in the Athletics Department.

62. Defendant's stated reasons for terminating Plaintiff were pretextual and not supported by credible evidence.

63. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered and continues to suffer damages, including loss of income, loss of benefits, reputational

9
Case 5:25-cv-00829-D-RJ     Document 1-5     Filed 12/23/25     Page 9 of 16

harm, loss of professional standing, diminished career opportunities, emotional distress, and other compensatory damages.

64. As a direct result of the Defendant's violation of federal law, Plaintiff has suffered financial losses in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

65. Defendant's actions were intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights under the ADEA, entitling Plaintiff to an award of liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT III
### (42 U.S.C. § 1983 – Equal Protection Clause)

66. The allegations of Paragraphs 1-65 of this Complaint are re-alleged and incorporated herein by reference.

67. At all relevant times, Defendant FSU was a public university acting under color of state law within the meaning of 42 U.S.C. § 1983.

68. Plaintiff, as a female employee, is a member of a protected class for purposes of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

69. Defendant, through its agents, employees, and officials, intentionally discriminated against Plaintiff on the basis of sex and deprived her of equal protection of the laws.

70. Defendants subjected Plaintiff to a biased, irregular, and procedurally deficient investigation based on false allegations.

71. Upon information and belief, similarly situated male employees within the Athletics Department were treated more favorably, received full procedural protections, and were not terminated despite allegations of comparable or greater seriousness.

72. Defendant's disparate treatment of Plaintiff was intentional and motivated by sex-based animus and the desire to remove the only senior woman administrator from the Athletics leadership structure and the only person consistently advocating for women's rights in athletics.

73. Defendant's actions resulted in Plaintiff's termination on or around August 15, 2024, constituting an adverse action taken because of her sex.

74. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered and continues to suffer damages, including loss of income, loss of benefits, reputational harm, loss of professional standing, diminished career opportunities, emotional distress, and other compensatory damages.

75. As a direct result of the Defendant's violation of federal law, Plaintiff has suffered financial losses in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

## COUNT IV
**(Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*)**

76. The allegations of Paragraphs 1-75 of this Complaint are re-alleged and incorporated herein by reference.

77. Defendant FSU is an educational institution receiving federal financial assistance and is therefore subject to the requirements and prohibitions of Title IX.

78. Title IX prohibits discrimination on the basis of sex in any educational program or activity receiving federal funds, including employment in such programs or activities.

79. Plaintiff was employed by FSU in its federally funded Athletics Department and was therefore entitled to the protections of Title IX as an employee.

80. Plaintiff was subjected to discriminatory treatment on the basis of her sex, including but not limited to:

    a. A biased and irregular investigation;

    b. Denial of procedural rights given to similarly situated male employees;

    c. Reliance on unsubstantiated and false allegations;

    d. Disparate disciplinary standards; and

    e. Termination of her employment.

81. Defendant's discriminatory actions resulted in Plaintiff's termination and the destruction of her decades-long career, professional reputation, and national leadership standing in collegiate athletics.

82. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered and continues to suffer damages, including loss of income, loss of benefits, reputational harm, loss of professional standing, diminished career opportunities, emotional distress, and other compensatory damages.

83. As a direct result of the Defendant's violation of federal law, Plaintiff has suffered financial losses in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

## COUNT V
### (Breach of Contract and Breach of the Implied Covenant of Good Faith & Fair Dealing)

84. The allegations of Paragraphs 1-83 of this Complaint are re-alleged and incorporated herein by reference.

85. On or around November 4, 2024, during mediation conducted pursuant to the SHRA grievance process, Plaintiff and Defendant FSU voluntarily entered into a Memorandum of Agreement ("MOA") intended to resolve Plaintiff's grievance.

86. The MOA constitutes a valid, binding, and enforceable contract under North Carolina law.

    a. Plaintiff provided consideration by agreeing to dismiss her pending grievance and forego additional internal remedies.

    b. FSU provided consideration by agreeing to clear Plaintiff's personnel file, provide positive references, and support her retirement benefits application.

87. Under the MOA, FSU expressly agreed to:

    a. Remove all references to "termination" and "investigation" from Plaintiff's HR file;

    b. Provide positive employment references for Plaintiff; and

    c. Permit and support Plaintiff's submission of retirement benefits.

88. Plaintiff fully performed her obligations under the MOA and reasonably relied on FSU's promises by withdrawing her grievance and ceasing further administrative challenges.

89. FSU breached the MOA by failing to perform its contractual obligations, including but not limited to:

    a. Failing to remove the "termination" and "investigation" references from Plaintiff's personnel file;

    b. Communicating negative, misleading, and harmful information to potential employers and national athletics organizations;

    c. Failing to provide the positive references required under the MOA; and

    d. Affirmatively reporting to the North Carolina Division of Employment Security ("DES") that Plaintiff was terminated for "misconduct," despite the MOA and despite knowing these allegations were rendered false.

90. FSU's false misconduct report directly caused DES to initially deny Plaintiff unemployment benefits, resulting in additional financial loss, emotional distress, and reputational harm.

91. FSU's false report to DES further violated the MOA because:

    a. It contradicted the agreement to remove all references to termination and investigation;

    b. It constituted a negative reference; and

    c. It impeded Plaintiff's ability to maintain income while seeking new employment.

92. FSU's actions constitute material breaches that deprived Plaintiff of the benefit of the bargain she made when she agreed to dismiss her grievance.

93. North Carolina law implies in every contract a covenant of good faith and fair dealing, requiring that neither party do anything to prevent the other from receiving the benefits of the agreement.

94. FSU violated this implied covenant by acting intentionally, unfairly, and in bad faith to frustrate Plaintiff's contractual rights.

95. FSU's conduct demonstrates bad faith, deception, and an intentional effort to deny Plaintiff the substantive benefits of the MOA, even though those benefits were the very reason she dismissed her grievance.

96. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer damages, including loss of income, loss of benefits, reputational harm, loss of professional standing, diminished career opportunities, emotional distress, and other compensatory damages.

97. As a direct result of the Defendant's violation of North Carolina law, Plaintiff has suffered financial losses in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

98. Furthermore, Plaintiff is entitled to recover all damages arising from Defendant's breach and bad-faith conduct, including consequential damages that were reasonably foreseeable at the time of contracting.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that:

1. As to Count I of this Complaint, Plaintiff have and recover of the Defendants compensatory damages in an amount to be determined by a trier of fact.

2. As to Count II of this Complaint, Plaintiff have and recover of the Defendants compensatory and punitive damages in an amount to be determined by a trier of fact.

3. As to Count III of this Complaint, Plaintiff have and recover of the Defendants compensatory and punitive damages in an amount to be determined by a trier of fact.

4. As to Count IV of this Complaint, Plaintiff have and recover of the Defendants compensatory and punitive damages in an amount to be determined by a trier of fact.

5. As to Count V of this Complaint, Plaintiff have and recover of the Defendants compensatory and punitive damages in an amount to be determined by a trier of fact.

6. As to all appropriate Counts of this Complaint, Plaintiff have and recover reasonable attorneys' fees from the Defendant.

7. As to all appropriate Counts of this Complaint, Plaintiff be awarded pre-judgment and post-judgment interest.

8. That the costs of this action be taxed against the Defendant.

9. That this case have a **Trial By Jury** on all issues so triable.

10. For such other and further relief as to the Court may seem just and proper.

This the 18th day of November, 2025.

                                                                      **HAIRSTON LANE, PA**

                                                                    ***/s/ Taylor C. Rosbrook***
                                                                    Taylor C. Rosbrook
                                                                    N.C. State Bar No. 62631
                                                                    James E. Hairston, Jr.
                                                                    N.C. State Bar No. 19687
                                                                    434 Fayetteville St., Ste. 2350
                                                                    Raleigh, NC 27601
                                                                    (919) 838-5295 Telephone
                                                                    (888) 510-1160 Facsimile
                                                                    trosbrook@hairstonlane.com
                                                                    jhairston@hairstonlane.com
                                                                    *Attorneys for Plaintiff*